UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

September 29, 2015

LETTER TO COUNSEL

RE:   *Patricia W. Smith v. Carolyn Colvin, Commissioner of Social Security Administration*
      Civil No. TJS-14-0622

Dear Counsel:

On March 4, 2014, the Plaintiff, Patricia W. Smith ("Ms. Smith"), petitioned this Court to review the Social Security Administration's final decision to deny her Disability Insurance Benefits ("DIB"). (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 15 & 17.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF Nos. 7 & 12.) Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny both motions and remand this case for further proceedings. This letter explains my rationale.

Ms. Smith filed her application for DIB on July 24, 2008. (Tr. 243.) She claimed alleged disability beginning on May 15, 2008. (*Id.*) Ms. Smith's claims were denied initially and on reconsideration. (Tr. 139, 166-67.) A hearing was held before an Administrative Law Judge ("ALJ") on May 21, 2010. (Tr. 101-37.) On August 4, 2010, the ALJ determined that Ms. Smith was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 144-51.) On October 28, 2011, the Appeals Council vacated the ALJ's initial decision and remanded the case for further consideration. (Tr. 155-58.) A second hearing was held before the ALJ on July 18, 2012. (Tr. 60-100.) On September 28, 2012, the ALJ again determined that Ms. Smith was not disabled during the relevant time frame. (Tr. 21-29.) The Appeals Council denied Ms. Smith's request for review of the ALJ's second decision (Tr. 1-6), so the ALJ's September 28, 2012 decision constitutes the final, reviewable decision of the agency.

The ALJ evaluated Ms. Smith's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Ms. Smith was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since May 15, 2008. (Tr. 24.) At step two, the ALJ found that Ms. Smith suffered from the severe impairments of disorders of the back, diabetes, and obesity. (*Id.*) At step three, the ALJ found that Ms. Smith's impairments, separately and in combination, failed to meet or equal

in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). (*Id.*) The ALJ determined that Ms. Smith has the RFC to

> perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she is limited to occasionally climbing ramps and stairs, balancing, and stooping; never climbing ropes, ladders, or scaffolds; and never kneeling, crouching, or crawling.

(Tr. 25.)

At step four, the ALJ determined that through the date last insured, Ms. Smith was "capable of performing past relevant work as a secretary for a real estate business" because such work would "not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 28.) Therefore, the ALJ found that Ms. Smith was not disabled under the Social Security Act. (Tr. 29.)

Ms. Smith raises three arguments. First, she argues that the ALJ erroneously relied on an RFC assessment created by a non-medical source, despite having been explicitly instructed by the Appeals Council not to do so. Second, she argues that the ALJ failed to properly evaluate Ms. Smith's credibility. Third, she argues that the ALJ did not give adequate weight to the opinions of Ms. Smith's treating physicians. I will address the first two arguments below.

Ms. Smith's first argument concerns the ALJ's reliance on a Physical Residual Functional Capacity Assessment completed by Cynthia Neiss. (ECF Nos. 15-2 at 22-24 & 20-1 at 1-8.) After the ALJ issued his first decision denying benefits, the Appeals Council remanded the case and noted that "Cynthia Neiss is a Disability Examiner, not a State agency medical consultant. Her assessment should not have been given any weight." (Tr. 156-57.) In the ALJ's decision issued after the remand by the Appeals Council, in considering Ms. Smith's RFC, the ALJ noted that Cynthia Neiss's Assessment was "persuasive as it is based on the evidence of record provided at that time, prior to December 2008." (Tr. 28.) Thus, the ALJ gave "persuasive" weight to an opinion that the Appeals Council instructed "should not have been given any weight." The Commissioner argues that the ALJ's compliance with the Appeals Council's instructions is not subject to this Court's review. (ECF No. 17-1 at 9-10.) Instead, this Court's review is limited to whether the ALJ's decision is supported by substantial evidence and reflects the application of the correct legal standards. (*Id.*)

Although the ALJ's second decision appears to contradict the instructions of the Appeals Council, the Commissioner is correct that "[t]his Court is not responsible for reviewing internal agency-level proceedings." (ECF No. 17-1) (citing *Veal v. Comm'r, Soc. Sec. Admin*, No. SAG-12-2619, 2013 WL 5308292, at *2 (D. Md. Sept. 19, 2013)). Nonetheless, the ALJ's reliance on the Neiss Assessment is problematic regardless of whether the ALJ followed the instructions of the Appeals Council. The Neiss Assessment was made by a disability examiner whose qualifications are unknown,[1] and who only examined the part of the record that was provided

---

[1] An ALJ is permitted to consider evidence from "other sources" even if they are non-medical. *See* 20 C.F.R. § 404.1513(d). *See also Beck v. Astrue*, No. 3:11-CV-00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (noting that when considering a non-medical source,

"prior to December 2008." (Tr. 28.) This means that the Neiss Assessment did not take into account approximately 30 months of Ms. Smith's life (from December 2008 through June 2011) that were relevant to the ALJ's determination of disability. Nonetheless, the ALJ gave the Neiss Assessment "persuasive" weight. In contrast, the opinions of Ms. Smith's treating physicians were given either only "partial weight" or "little weight." It is not clear to this Court why the ALJ accorded less weight to Ms. Smith's treating physicians than was given to a non-medical assessment based on a review of incomplete medical records.[2] For this reason, the Court is unable to find that the RFC is based on substantial evidence. Because the RFC was ultimately used in determining that Ms. Smith could perform her past relevant work, and that she was not disabled, this error requires a remand for further consideration by the ALJ.

Ms. Smith's second argument is that the ALJ did not properly evaluate her credibility. (ECF No. 15-2 at 24-33.) There is a two-part test for evaluating a claimant's subjective complaints concerning their work performance limitations. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id*. After the claimant meets this threshold obligation, the ALJ must evaluate the "intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id*. at 595. Social Security Ruling 96-7p provides that in evaluating an individual's credibility, an ALJ must consider the following, in addition to the objective medical evidence:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than

---

an ALJ should consider "(1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion") (citing SSR 06-03P).

[2] The ALJ noted his sympathy with "any claimant in a situation such as [Ms. Smith's]," because her "condition may have worsened after the period surrounding the date last insured." (Tr. 26.) To the extent that Ms. Smith's condition had actually worsened after 2011, careful attention should be paid to the evidence that relates to Ms. Smith's condition between 2008 and 2011. If Ms. Smith's condition did get worse after her date last insured, any evidence of a gradual deterioration in her condition that occurred after the Neiss Assessment would be relevant to the ALJ's determination. In addition, while this Court's function is not to independently assess the weight that should be given to each piece of evidence in the record, certain conclusions of the Neiss Assessment do appear to contradict other parts of the record. For example, the Neiss Assessment did not find that Ms. Smith required a cane to walk, but the record contains numerous references to Ms. Smith's need to use a cane. (*See* Tr. 326, 339, 386, 415, 444, 508 & 571.)

treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit criticized an ALJ's use of the following boilerplate language regarding a claimant's credibility:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment.

780 F.3d at 639 (noting that this language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility'") (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)).

Here, the ALJ's evaluation of Ms. Smith's credibility is problematic for two reasons. First, the credibility evaluation is based at least in part on the ALJ's RFC determination, which I have found is not based on substantial evidence. Second, the ALJ did not adequately explain which of Ms. Smith's statements he found to be credible, and why he found other statements not to be credible. Instead, the ALJ used the boilerplate language criticized in *Mascio* and made general references to contradictions between Ms. Smith's statements and the evidence (or lack of evidence) contained in the record. The ALJ implied that "significant treatment gaps" between 2009 and 2011 indicated that Ms. Smith was not disabled, presumably because a person in a condition such as her would seek regular medical treatment. But the ALJ did not explain why he discredited Ms. Smith's statements that she had been unable to afford medical treatment at certain times, and that she had ceased using her CPAP machine and certain medication because she could no longer afford them.[3] Instead, the ALJ's opinion suggests that Ms. Smith's non-compliance shows that she exaggerated her symptoms. In accordance with *Mascio*, the ALJ must provide a more specific explanation of how he judged Ms. Smith's credibility. 780 F.3d at 640.

I decline to specifically address Ms. Smith's third argument because I have largely conflated it with her argument regarding the ALJ's consideration of the Neiss Assessment. In any event, because this case will be remanded to the ALJ for further consideration, the Court is not required to address all of her arguments.

For the reasons set forth herein, Ms. Smith's Motion for Summary Judgment (ECF No. 15) and the Commissioner's Motion for Summary Judgment (ECF No. 17) will be DENIED. The ALJ's opinion will be VACATED and the case will be REMANDED for further proceedings. The clerk is directed to CLOSE this case.

---

[3] The ALJ noted that Ms. Smith "reported that she had financial issues with her Medicare deductible" during the relevant time period, but does not elaborate on how Ms. Smith's report of her financial issues impacted his decision. (Tr. 26.)

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

_____/s/_____
Timothy J. Sullivan
United States Magistrate Judge